UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| HELICOPTER HELMET LLC and RONALD A. ABBOTT | ) ) ) | Civil Action No.: 2:12-cv-03440-PMD |
| Plaintiff, | ) ) ) | **VERIFIED AMENDED COMPLAINT** |
| v. | ) ) | **(Jury Trial Demanded)** |
| TIGER PERFORMANCE PRODUCTS, INC. and ALBERT HAWKINS a/k/a SONNY HAWKINS, | ) ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs Helicopter Helmet LLC and Ronald A. Abbott (collectively, "Plaintiffs") by and through their undersigned counsel, allege for their Verified Complaint as follows:

## NATURE OF ACTION

1.      This is an action for defamation; cybersquatting in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d); false designation of origin and unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125 (a)(1)(A); false advertising and unfair competition in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); common law trademark infringement; unfair trade practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code §§ 39-5-10 *et seq.*; intentional interference with prospective contractual relations; common law unfair competition; and unjust enrichment.

## PARTIES

2.      Plaintiff Helicopter Helmet LLC ("Helicopter Helmet") is a limited liability company organized and existing under the laws of the State of Delaware with a principal place of

business at 3227 Walter Drive, Building B, Johns Island in the County of Charleston, State of South Carolina.

3. Plaintiff Ronald A. Abbott ("Abbott") is an individual residing and working in the County of Charleston, State of South Carolina. Plaintiff Abbott is, and at all times herein mentioned, was President and Managing Member of Plaintiff Helicopter Helmet.

4. Upon information and belief, Defendant Tiger Performance Products, Inc. ("Tiger") is or was a corporation organized and operating under the laws of the State of New York with a principal place of business in the County of Erie, State of New York.

5. Upon information and belief, Defendant Albert Hawkins is also known as Sonny Hawkins (hereinafter, collectively, "Hawkins") and is a New York resident.

6. Upon information and belief, Defendant Tiger was dissolved by the New York Department of State's Office on January 27, 2010, but a person or entity identifying itself as "Tiger Performance Products, Inc." continues to do business in the State of New York and throughout the United States.

7. Upon information and belief, Defendant Hawkins is or was an owner, officer and/or director of Defendant Tiger, and since Defendant Tiger's dissolution, Defendant Hawkins has continued to operate the business as a sole proprietorship doing business under the name "Tiger Performance Products, Inc." As a result, Defendants Tiger and Hawkins are jointly and severally liable for the claims asserted herein.

8. In the alternative, and upon information and belief, Defendant Tiger is merely a façade for the operations of Defendant Hawkins and/or Defendant Hawkins engaged in actions constituting disregard of the corporate formalities and the separate corporate function, and an element of injustice or fundamental unfairness would result if the acts of Defendant Tiger are not

also regarded as the acts of Defendant Hawkins. Therefore, Plaintiffs request that any "corporate veil" of Defendant Tiger be pierced, and Defendant Hawkins be held jointly and personally liable for any judgment against Defendant Tiger in this action.

9.      In the alternative, and upon information and belief, Plaintiffs are informed and belief that Defendant Hawkins operates total dominion and control of Defendant Tiger, and inequitable consequences would result if the acts of Defendant Tiger are not also regarded as the acts of Defendant Hawkins. Therefore, Plaintiffs request that Defendant Tiger be treated as Defendant Hawkins' alter ego or instrumentality, and Defendant Hawkins be held jointly and personally liable for any judgment against Defendant Tiger in this action.

## JURISDICTION AND VENUE

10.      Upon information and belief, Defendants have submitted to the jurisdiction of this Court pursuant to South Carolina's long-arm statute, S.C. Code § 36-2-803, for the causes of action described below, based on Defendants commission of the torts described herein in this State and/or by reason of causing tortious injury in this State by an act outside of the State and regularly doing or soliciting business, or engaging in a persistent course of conduct, or deriving substantial revenue from goods used or consumed or services rendered in South Carolina.

11.      This Court has subject matter jurisdiction over Plaintiffs' federal claims under 15 U.S.C. § 1125 pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1337. In addition, this Court has subject matter jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. § 1332, as the parties have diverse citizenship and the amount in controversy exceeds $75,000.00.

12.     Upon information and belief, venue is proper within the District of South Carolina pursuant to 28 U.S.C. § 1391(b), and within the Charleston Division pursuant to Rule 3.01 of the Local Civil Rules of the U.S. District Court for the District of South Carolina.

## GENERAL ALLEGATIONS AND FACTUAL BACKGROUND

13.     All actions alleged to have been performed by "Defendants" throughout this Amended Verified Complaint are alleged to have been performed by all Defendants, collectively, and by each Defendant individually, unless specifically stated otherwise.

14.     Plaintiff Helicopter Helmet is engaged in the business of selling and repairing aviation-related flight suits, helmets, accessories, equipment, survival gear, law enforcement equipment and gear, and emergency medical service equipment and gear, as well as the business of offering life raft rentals. Plaintiff Helicopter Helmet promotes and conducts its business in large part through its Internet website, www.HelicopterHelmet.com ("HelicopterHelmet.com"). A screen capture of the home page of HelicopterHelmet.com is attached hereto as Exhibit "A."

15.     Upon information and belief, Defendants are engaged in the business of selling and repairing aviation-related helmets, accessories and equipment in direct competition with Plaintiff Helicopter Helmet. On information and belief, Defendants promote and conduct their business in large part through their Internet website, www.TigerPerformance.com and/or Store.TigerPerformance.com (collectively "TigerPerformance.com"). A screen capture of the home page and selected additional pages of TigerPerformance.com are attached hereto as Exhibit "B."

16.     Upon information and belief, on or about October 31, 2012, Defendant Tiger and/or Defendant Hawkins, individually or through an agent, employee, or representative, using the screen name "pilot143," willfully published, in Charleston County and throughout South

Carolina, the United States and the world, in electronic written form, the posts set forth in Exhibit "C" (attached hereto) in the community forums on a third party website, www.JustHelicopters.com ("JustHelicopters.com"). Upon information and belief, these posts published by Defendants contain false, unjustified, and unprivileged statements of fact of and concerning the Plaintiffs.

17.  Upon information and belief, in or about mid-2012, Defendant Tiger and/or Defendant Hawkins, individually or through an agent, employee, or representative, also willfully published, in Charleston County and throughout South Carolina, the United States and the world, in electronic written form, statements about Plaintiffs on TigerPerformance.com. These statements are included in Exhibit "B" hereto. Upon information and belief, these statements made by Defendants on TigerPerformance.com contain false, unjustified, and unprivileged statements of fact of and concerning the Plaintiffs.

18.  Plaintiff Helicopter Helmet is the owner of the trademark, service mark or other designation of origin HELICOPTERHELMET.COM (the "Mark"). The Mark is distinctive, either inherently or by acquisition of a secondary meaning in the marketplace.

19.  Since about April 2003, the Mark has been in use in connection with the sale of Plaintiff Helicopter Helmet's goods and services in South Carolina and throughout the United States, including at all times sales and repair of aviation-related helmets, accessories and equipment.

20.  The Mark is symbolic of extensive goodwill and consumer recognition in the marketplace for sales and repair of aviation-related helmets, accessories and equipment, built up by Plaintiff Helicopter Helmet through substantial amounts of time and effort in advertising and promotion.

21.     In addition, Plaintiff Helicopter Helmet owns trade dress rights in the appearance of its website, HelicopterHelmet.com. Plaintiff Helicopter Helmet has used certain distinct features on its website in connection with its offer of sale and repair of aviation-related clothing, helmets, accessories and equipment. Specifically, since at least 2008, Plaintiff Helicopter Helmet has used the following combination of visual elements on HelicopterHelmet.com as part of its trade dress (collectively, the "HH Trade Dress"):

     a.     A black background;

     b.     A header with the company name in the top left of the screen;

     c.     Gray accents in the nature of bars and/or frames;

     d.     Five colors: black, orange, gray, red and white

     e.     White, red and orange text; and

     f.     A left column featuring a list of more than ten shopping categories in gray text.

22.     Plaintiff Helicopter Helmet's good and services, as identified by the Mark and the HH Trade Dress, have become widely and favorably accepted by consumers of aviation-related clothing, helmets, accessories and equipment and enjoyed substantial commercial success. Consequently, Plaintiff Helicopter Helmet's Mark and the HH Trade Dress have become substantial assets and identifying indicia of Plaintiff Helicopter Helmet's quality goods, services and goodwill. Though its efforts, Plaintiff Helicopter Helmet has acquired a reputation as a competent, dependable and honest business with valuable goodwill in the aviation-related clothing, helmets, accessories and equipment industry. Plaintiff Helicopter Helmet's Mark and the HH Trade Dress are distinctive and/or have developed secondary meaning in the relevant segment of the market.

23. Upon information and belief, in or around November 2008, Defendant Tiger and/or Defendant Hawkins acquired the Internet domain name www.HelicopterHelmets.com ("HelicopterHelmets.com"). Defendants' domain name, HelicopterHelmets.com, differs from Plaintiffs' domain name and the Mark, HELICOPTERHELMET.COM, by only the addition of an "s."

24. Upon information and belief, for various periods between late 2008 through at least 2010, Defendants Tiger and/or Hawkins used the domain name HelicopterHelmets.com to divert customers or prospective customers away from Plaintiff Helicopter Helmet. Upon information and belief, during that time, customers or prospective customers of Helicopter Helmet that accidentally typed "helicopterhelmets.com," rather than "helicopterhelmet.com," were diverted to a website owned by Defendants.

25. Upon information and belief, in and around 2010, Defendants maintained a website at the domain name HelicopterHelmets.com where consumers could purchase aviation-related clothing, helmets, accessories and equipment. Upon information and belief, at some point in the process of completing those purchases, consumers were redirected to another website owned by Defendants.

26. In March 2010, Plaintiff Helicopter Helmet demanded that Defendants permanently discontinue using the domain name HelicopterHelmets.com and/or transfer that domain name to Plaintiff Helicopter Helmet. Defendants refused to agree to permanently discontinue use of the domain name, but in late 2010, upon information and belief, Defendants temporarily discontinued using the domain name HelicopterHelmets.com.

27. Notwithstanding the temporary discontinuation set forth in Paragraph 26, however, upon information and belief, Defendant Tiger and/or Defendant Hawkins renewed the

registration for HelicopterHelmets.com on December 29, 2012, evidencing an intent to continue Defendants' wrongful practice described in Paragraphs 24 and 25 above.

28.     Upon information and belief, in or about early 2012, Defendants redesigned TigerPerformance.com and began using a confusingly similar trade dress to the HH Trade Dress on that website.  Defendants' use of the similar trade dress is evidenced in Exhibit "B."

29.     Upon information and belief, Plaintiff Helicopter Helmet's use in commerce of the Mark, the HelicopterHelmet.com domain name, and the HH Trade Dress described herein predated Defendants' use of a confusingly similar trade dress to the HH Trade Dress and the HelicopterHelmets.com domain name.

30.     Upon information and belief, Defendants' actions described in Paragraphs 23-28 herein were done with full knowledge of Plaintiff Helicopter Helmet's rights in the Mark, the HelicopterHelmet.com domain name and the HH Trade Dress.

31.     Upon information and belief, since at least as early as 2009, Defendants have had actual notice of Plaintiff Helicopter Helmet's right in the HH Trade Dress.

32.     Upon information and belief, since at least as early as August 2008, Defendants have had actual notice of Plaintiff Helicopter Helmet's rights in the Mark and the HelicopterHelmet.com domain name.

33.     Upon information and belief, Defendants performed the actions set forth in Paragraphs 16, 17 and 23-28 herein, including publishing the false statements of fact about the Plaintiffs, using the nearly identical domain name helicopterhelmets.com, and copying the HH Trade Dress, as part of an ongoing effort to unlawfully harm the business of Plaintiff Helicopter Helmet and promote Defendants' business.

## FIRST CAUSE OF ACTION
### Libel
### (By Both Plaintiffs Against All Defendants)

34.     Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 33, inclusive, as though set forth in full herein.

35.     Upon information and belief, on or about October 31, 2012, Defendant Tiger and/or Defendant Hawkins, individually or through an agent, employee, or representative, using the screen name "pilot143," willfully published on the website JustHelicopters.com, in Charleston County and throughout South Carolina, the United States and the world, in electronic written form, the information set forth in Exhibit "C" hereto.

36.     Upon information and belief, the information set forth in Exhibit "C" includes the following false, unjustified, and unprivileged statements of fact of and concerning the Plaintiffs:

a.     that Plaintiffs are being "hunt[ed] down like a criminal by MSA Gallet";

b.     that aviation products manufacturer MSA Gallet does not want Plaintiffs selling its products;

c.     that "every" aviation products vendor is "going after" Plaintiffs;

d.     that Plaintiffs are selling refurbished MSA Gallet helmets as new;

e.     that Plaintiffs sold a cloned Gentex helmet as a Gentex-brand helmet;

f.     that Plaintiffs are no longer permitted by MSA Gallet to sell MSA Gallet equipment;

g.     that Plaintiffs are buying used helmets and selling them as new ones;

h.     that MSA Gallet is trying to stop Plaintiffs from selling any MSA Gallet products;

i.     that MSA Gallet stopped Plaintiffs from buying helmets from authorized vendors;

j.     that Plaintiffs sold a refurbished helmet to a customer who did not know the helmet was refurbished;

k.     that Plaintiffs are known for going on forums and bashing MSA Gallet's products to push people to buy a generic helmet modeled on (or cloned from) a previous design by Gentex, another helmet manufacturer;

l.     that Defendant Tiger and/or Defendant Hawkins bought a helmet from Plaintiffs and later found it was refurbished and/or that Plaintiffs issued a sales receipt for a refurbished helmet that did not indicate its status as refurbished; and

m.     that, by implication, Plaintiffs are selling MSA Gallet products illegally, fraudulently or in an unauthorized manner.

37.     Upon information and belief, in or about mid-2012, Defendant Tiger and/or Defendant Hawkins, individually or through an agent, employee, or representative, willfully published on the website TigerPerformance.com, in Charleston County and throughout South Carolina, the United States and the world, in electronic written form, the information in Exhibit "B" hereto.

38.     Upon information and belief, the information set forth in Exhibit "B" contains the following false, unjustified, and unprivileged statements of fact of and concerning either or both of the Plaintiffs:

a.     that Plaintiffs are advertising as being an authorized MSA Dealer, although they are not;

b.     that Plaintiffs are not permitted to sell MSA Gallet helmets;

c.   that Plaintiffs are unlawfully selling MSA Gallet helmets;

d.   that Plaintiffs are selling refurbished MSA Gallet helmets as new helmets;
and

e.   that Plaintiffs are removing serial numbers and stickers from helmets to resell refurbished helmets as new helmets.

39.   Upon information and belief, the statements identified in Paragraphs 36 and 38 (the "Defamatory Statements"), and each of them, were written by, published, and/or directed to be published by the Defendants with ill-will and malice towards the Plaintiffs and with the intent to harm the Plaintiffs with respect to their reputations, characters, professions, trades and businesses.

40.   Upon information and belief, the Defamatory Statements, and each of them, were seen and read by persons in Charleston County and throughout South Carolina, the United States and the world.

41.   Upon information and belief, the Defamatory Statements, and each of them, were of and concerning Plaintiffs and were so understood by those who read them.

42.   Upon information and belief, the Defamatory Statements, and each of them, were understood by those who saw and read them in a way that defamed each and both of the Plaintiffs because the Defamatory Statements falsely charged Plaintiffs with fraud, misrepresentation, unfair trade practices, unfitness in their professions, and other immoral activities.

43.   The Defamatory Statements, collectively and/or individually, are written or printed words tending to degrade Plaintiffs, and the same are actionable <u>per se</u> such that there is a

presumption at law that the Defendants acted with common law malice and that Plaintiffs suffered general damages.

44.    Upon information and belief, the Defamatory Statements, and each of them, were unprivileged and exposed Plaintiffs to hatred, contempt, ridicule, and/or obloquy, and/or caused them to be shunned and avoided, and/or had a tendency to injure them in their occupations and reputations in the community.

45.    Upon information and belief, the Defamatory Statements, and each of them, were made with knowledge of their falsity and/or or with reckless disregard as to their truth or falsity and/or with constitutional actual malice.

46.    As a result of Defendants' conduct as described above, Plaintiff Abbott has suffered injury to reputation, mental suffering, hurt feelings and other similar types of damages and injuries.

47.    As a result of Defendants' conduct as described above, Plaintiff Helicopter Helmet has suffered injury to reputation, loss of business, and other similar types of damages and injuries.

48.    As a result of Defendants' conduct as described above, Plaintiffs are entitled to a verdict against the Defendants jointly and severally for general damages, special damages, and substantial punitive damages.

**SECOND CAUSE OF ACTION**
**Cybersquatting in Violation of 15 U.S.C. § 1125(d)**
**(By Plaintiff Helicopter Helmet Against All Defendants)**

49.    Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 48, inclusive, as though set forth in full herein.

50.     Plaintiff Helicopter Helmet has owned and operated the website HelicopterHelmet.com since at least April 2003, and has used the website in connection with its business of selling aviation-related clothing, helmets, accessories, equipment, survival gear, law enforcement equipment and gear, and emergency medical service equipment and gear since that time.

51.     By virtue of its use of the Mark, HELICOPTERHELMET.COM, since at least 2003, Plaintiff Helicopter Helmet has acquired common law rights in the Mark, and the Mark is inherently distinctive or has acquired secondary meaning in the marketplace in association with Plaintiff Helicopter Helmet's goods and services over nearly ten years of consecutive use.

52.     Upon information and belief, Defendant Tiger and/or Defendant Hawkins registered the domain name HelicopterHelmets.com, which is confusingly similar to the Mark, with the bad faith intent to profit from the Mark.

53.     Upon information and belief, neither of the Defendants has trademark or other intellectual property rights in the domain name HelicopterHelmets.com; the term HelicopterHelmets.com is not either of the Defendants' legal name or established nickname; neither of the Defendants had previously used the domain name HelicopterHelmets.com in connection with the bona fide offering of goods or services; and neither of the Defendants has exercised a bona fide noncommercial or fair use of the Mark in a website accessible under the term HelicopterHelmets.

54.     Upon information and belief, in performing the actions described in Paragraphs 23-27 and 52 above, Defendant Tiger and/or Defendant Hawkins intended to divert customers away from Plaintiff Helicopter Helmet's website, HelicopterHelmet.com, to a website owned by Defendants that could harm the good will represented by the Mark for the purposes of

commercial gain or with the intent to tarnish or disparage the Mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendants' products or services with those of Plaintiff Helicopter Helmet.

55.     Upon information and belief, Defendants willfully, knowingly, intentionally and maliciously selected and use the Helicopterhelmets.com domain name in order to cause confusion and mistake in the minds of the purchasing public as to the source, origin and sponsorship of Defendants' goods and services.

56.     Upon information and belief, Defendants' use of a confusingly similar domain name has caused, and will continue to cause, mistake and confusion in the minds of the purchasing public as to the source, origin and sponsorship of Defendants' goods and services.

57.     Upon information and belief, Defendants' violation of 15 U.S.C. § 1125(d) has caused, and unless enjoined, will continue to cause Plaintiff Helicopter Helmet to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiff Helicopter Helmet is entitled to permanent injunctive relief.

58.     As a result of Defendants' conduct as described above, Plaintiff Helicopter Helmet is entitled to an order for Defendants to forfeit or cancel the domain name, HelicopterHelmets.com, or to transfer the domain name HelicopterHelmets.com to Plaintiff Helicopter Helmet.

59.     Each of Defendants' actions in violation of 15 U.S.C. § 1125(d) has caused Plaintiff Helicopter Helmet injury and damages in amount to be proven at trial.

60.     Pursuant to 15 U.S.C. § 1117(a), as a result of Defendants' violation of 15 U.S.C. § 1125(d), Plaintiff Helicopter Helmet is entitled to recover Defendants' profits, any damages

sustained by the Plaintiff, and the costs of this action. In addition, due to the willful nature of Defendants' conduct, Plaintiffs request treble the amount of actual damages and reasonable attorneys' fees.

61.    In the alternative to the above, pursuant to 15 U.S.C. § 1117(d), Plaintiff Helicopter Helmet is entitled to statutory damages in the amount of not less than $1,000 and not more than $100,000.

### THIRD CAUSE OF ACTION
### <u>False Designation of Origin and Unfair Competition</u>
### <u>in Violation of 15 U.S.C. § 1125(a)(1)(A)</u>
### (By Plaintiff Helicopter Helmet Against All Defendants)

62.    Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 61, inclusive, as though set forth in full herein.

63.    Upon information and belief, Defendants' use of a confusingly similar mark to the Mark, as set forth in Paragraphs 23-27 and 52-55 above, and/or use of a confusingly similar trade dress to the HH Trade Dress set forth in Paragraph 28 above, (collectively, the "False Designations") constitutes use in commerce on or in connection with goods or services, or any container of goods, of a word, term, name, symbol or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of the Defendants with Plaintiff Helicopter Helmet, or as to the origin, sponsorship, or approval of the Defendants' goods, services or commercial activities, all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

64.    Upon information and belief, Defendants willfully, knowingly, intentionally and maliciously engaged in the False Designations in order to cause confusion and mistake in the

minds of the purchasing public as to the source, origin and sponsorship of Defendants' goods and services.

65.     Upon information and belief, Defendants' False Designations have caused, and will continue to cause, mistake and confusion in the minds of the purchasing public as to the source, origin and sponsorship of Defendants' goods and services.

66.     Upon information and belief, Defendants' violations of 15 U.S.C. § 1125(a)(1)(A) have caused, and unless enjoined, will continue to cause Plaintiff Helicopter Helmet to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiff Helicopter Helmet is entitled to permanent injunctive relief.

67.     Each of Defendants' actions in violation of 15 U.S.C. § 1125(a)(1)(A) has caused Plaintiff Helicopter Helmet injury and damages in amount to be proven at trial.

68.     Pursuant to 15 U.S.C. § 1117(a), as a result of Defendants' violation of 15 U.S.C. § 1125(a)(1)(A), Plaintiff Helicopter Helmet is entitled to recover Defendants' profits, any damages sustained by the Plaintiff, and the costs of this action. In addition, due to the willful nature of Defendants' conduct, Plaintiffs request treble the amount of actual damages and reasonable attorneys' fees.

**FOURTH CAUSE OF ACTION**
**False Advertising and Unfair Competition**
**in Violation of 15 U.S.C. § 1125(a)(1)(B)**
**(By Plaintiff Helicopter Helmet Against All Defendants)**

69.     Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 68, inclusive, as though set forth in full herein.

70.     Upon information and belief, the Defamatory Statements, the False Designations, and the representation on TigerPerformance.com that one or more of the Defendants is a "factory

trained and authorized MSA Gallet helmet repair station" (the "False Representation") are false designations of origin, false or misleading descriptions of fact, and/or false or misleading representations of fact (collectively, the "False Advertising"). The False Representation is exhibited on the "MSA Gallet Helmet Refurbishing Page" of TigerPerformance.com and is attached hereto as part of Exhibit "B."

71.     Upon information and belief, the False Advertising constitutes a use in commerce on or in connection with goods or services, or any container of goods, of a word, term, name, symbol or device, or a combination thereof, or a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which, in commercial activities, or as commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin Defendants' goods, services, or commercial activities, all in violation of 15 U.S.C. § 1125(a)(1)(b).

72.     Upon information and belief, Defendants willfully, knowingly, intentionally and maliciously engaged in the False Advertising in order to cause such misrepresentation in advertising or promotion.

73.     Upon information and belief, Defendants' False Advertising has caused, and will continue to cause, mistake and confusion in the minds of the purchasing public.

74.     Upon information and belief, Defendants' violations of 15 U.S.C. § 1125(a)(1)(B) have caused, and unless enjoined, will continue to cause Plaintiff Helicopter Helmet to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiff Helicopter Helmet is entitled to permanent injunctive relief.

75.     Each of Defendants' actions in violation of 15 U.S.C. § 1125(a)(1)(B) has caused Plaintiff Helicopter Helmet injury and damages in amount to be proven at trial.

76.     Pursuant to 15 U.S.C. § 1117(a), as a result of Defendants' violation of 15 U.S.C. § 1125(a)(1)(B), Plaintiff Helicopter Helmet is entitled to recover Defendants' profits, any damages sustained by the Plaintiff, and the costs of this action. In addition, due to the willful nature of Defendants' conduct, Plaintiffs request treble the amount of actual damages and reasonable attorneys' fees.

**FIFTH CAUSE OF ACTION**
**Common Law Trademark Infringement**
**(By Plaintiff Helicopter Helmet Against All Defendants)**

77.     Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 77, inclusive, as though set forth in full herein.

78.     As set forth above, Plaintiff Helicopter Helmet has continuously used the Mark since 2003 and has thereby acquired common law trademark rights in the Mark.

79.     Upon information and belief, Defendants' use of a confusingly similar mark to the Mark (the "Trademark Infringement") as set forth above has created a likelihood of confusion as to the source of Defendants' and Plaintiff Helicopter Helmet's goods and services.

80.     Upon information and belief, consumers viewing the mark used by Defendant would likely assume that the goods and services it represents are associated with the source of the Mark.

81.     Upon information and belief, Defendants are aware of Plaintiff Helicopter Helmet's Mark and have knowingly and intentionally used a confusingly similar mark for goods and services competing with Plaintiff Helicopter Helmet's own goods and services in the same field.

82.     Upon information and belief, Defendants' use of a confusingly similar mark was subsequent to Plaintiff Helicopter Helmet's use of the Mark in commerce.

83.     Each act of the Trademark Infringement has caused, and unless enjoined, will continue to cause Plaintiff Helicopter Helmet to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiff Helicopter Helmet is entitled to permanent injunctive relief.

84.     Upon information and belief, each act of the Trademark Infringement has resulted in a profit for Defendants and has proximately caused Plaintiff Helicopter Helmet to suffer irreparable damage by way of lost sales and continuing damages to its goodwill and reputation.

## SIXTH CAUSE OF ACTION
### Intentional Interference with Prospective Contractual Relations
#### (By Plaintiff Helicopter Helmet Against All Defendants)

85.     Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 84, inclusive, as though set forth in full herein.

86.     Upon information and belief, and as alleged herein, Defendants made the Defamatory Statements and False Representation to Plaintiff Helicopter Helmet's prospective customers, as well as diverting Plaintiff Helicopter Helmet's customers to Defendants' website, thereby tortiously interfering with Plaintiff Helicopter Helmet's prospective contractual relations.

87.     Specifically, upon information and belief, and among other acts of tortious interference, Defendants made statements about Plaintiffs, charging them with fraud, misrepresentation, unfair trade practices, unfitness in their professions, and other immoral activities, to Plaintiff Helicopter Helmet's potential customers through the Defamatory Statements. As evidenced in Exhibit "C," in response to one of the Defamatory Statements on

JustHelicopters.com, a potential customer using the user name "Keeping Away" stated that he/she would not buy helmets from Plaintiff Helicopter Helmet in light of Defendants' statements made on JustHelicopters.com.

88.     Specifically, upon information and belief, and among other acts of tortious interference, Defendants redirected Plaintiff Helicopter Helmet's potential customers who mistyped the web address for HelicopterHelmet.com to Defendants' website, tortiously interfering with Plaintiff Helicopter Helmet's prospective contractual relations.

89.     Upon information and belief, Defendants were acting intentionally and with an improper purpose, motive or method and not merely for the proper pursuit of their own contractual rights with a third party in performing the actions alleged in Paragraphs 86 through 88.

90.     Plaintiff Helicopter Helmet had a reasonable expectation of benefits from the prospective contractual relations described in this Cause of Action, and as a result of Defendants' interference, Plaintiff Helicopter Helmet was deprived of those benefits.

91.     Defendants' intentional interference with prospective contractual relations as alleged herein has caused Plaintiff Helicopter Helmet injury and damages in amount to be proven at trial.

92.     For the foregoing reasons, Plaintiff Helicopter Helmet is entitled to actual and punitive damages in an amount to be determined at trial, as well as injunctive relief.

### SEVENTH CAUSE OF ACTION
### Unfair Trade Practices in Violation of S.C. Code §§ 39-5-10 *et seq.*
### (By Plaintiff Helicopter Helmet Against All Defendants)

93.     Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 92, inclusive, as though set forth in full herein.

94.     Upon information and belief, as a result of the employment by Defendants of one or more of the unfair or deceptive methods, acts or practices described in Paragraphs 13-92 (collectively, the "Unfair Trade Practices"), Plaintiffs have suffered an ascertainable loss of money or property, and Defendants have engaged in unfair trade practices in violation of South Carolina's Unfair Trade Practices Act, S.C. Code §§ 39-5-10 *et seq.*

95.     Upon information and belief, the actions of the Defendants in performing the Unfair Trade Practices were offensive to public policy, immoral, unethical and/or oppressive and had tendency to deceive.

96.     Upon information and belief, the Unfair Trade Practices are contrary to and had an impact on the public interest and were willful and knowing, and thus, each of the Defendants' conduct constituted willful and knowing violations of South Carolina Code § 39-5-20.

97.     Pursuant to South Carolina Code § 39-5-140, Plaintiffs are entitled to actual damages as a result of Defendants' use of unfair and deceptive trade practices, and because these acts are willful and knowing violations of South Carolina's Unfair Trade Practices Act, Plaintiffs are entitled to treble damages and attorney's fees.

98.     Upon information and belief, Defendants' conduct described in this Cause of Action has caused and, unless enjoined, will continue to cause Plaintiffs to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiffs are entitled to permanent injunctive relief.

**EIGHTH CAUSE OF ACTION**
**<u>COMMON LAW UNFAIR COMPETITION</u>**
**(By Plaintiff Helicopter Helmet Against All Defendants)**

99.   Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 98, inclusive, as though set forth in full herein.

100.   Upon information and belief, one or more of the actions of Defendants set forth in Paragraphs 13-98 (collectively, the "Unfair Competition") constitutes passing off, commercial disparagement, misappropriation and/or another form of common law unfair competition, which has caused Plaintiff Helicopter Helmet injuries and damages, including but not limited to those injuries and damages related to the loss of customers.

101.   Upon information and belief, Defendants continue to engage in the Unfair Competition and will continue to do so in the foreseeable future.

102.   Upon information and belief, each of Defendants' actions in furtherance of the Unfair Competition were undertaken willfully, maliciously, and with the intent and knowledge that such actions would cause confusion, mistake, and deception among consumers in the relevant marketplace, and such would benefit the commercial activities of the Defendants at the expense of the commercial activities of Plaintiff Helicopter Helmet.

103.   Each act of the Unfair Competition has caused, and unless enjoined, will continue to cause Plaintiff Helicopter Helmet to suffer immediate, irreparable and continuous loss, damage and injury to its goodwill and business reputation. Monetary damages will not afford full and adequate relief. As a result, Plaintiff Helicopter Helmet is entitled to permanent injunctive relief.

104.   Each act of the Unfair Competition has caused Plaintiff Helicopter Helmet injury and damages in amount to be proven at trial.

105.   For the foregoing reasons, Plaintiff Helicopter Helmet is entitled to actual and punitive damages in an amount to be determined at trial, as well as injunctive relief.

## NINTH CAUSE OF ACTION
## UNJUST ENRICHMENT
### (By Plaintiff Helicopter Helmet Against All Defendants)

106. Plaintiffs incorporate herein by reference all of the allegations of Paragraphs 1 through 105, inclusive, as though set forth in full herein.

107. By utilizing the goodwill and intellectual property of Plaintiff Helicopter Helmet and/or by taking the unauthorized actions as set forth in the causes of action herein (including but not limited to defamation, cybersquatting, trademark infringement, trade dress infringement, false designation of origin, false advertising, unfair trade practices, intentional interference with prospective contractual relations, and unfair competition), Defendants have wrongfully, willfully, wantonly and/or recklessly diverted substantial profits and other benefits from Plaintiff Helicopter Helmet.

108. Defendants are not entitled to retain the profits and other benefits derived from unauthorized use of Plaintiff Helicopter Helmet's property or goodwill, or from such other unauthorized actions as described herein. As a result, Defendants have received unjust enrichment and must return to Plaintiff Helicopter Helmet all profits and other benefits wrongfully received.

### Prayer for Relief

**WHEREFORE**, the Plaintiffs, complaining against the Defendants above named, pray for judgment against the Defendants, jointly and severally, as follows:

A. That each Defendant, its officers, agents, servants, employees and attorneys, and all those in active concert or participation with them, be permanently enjoined and restrained from:

1.      Using the Mark or the HH Trade Dress, or any confusingly similar mark or trade dress, in any manner whatsoever, including use as a part of any trademark, service mark, trade name, trade dress, or any other designation that creates a likelihood of confusion, mistake or deception with respect to Plaintiff Helicopter Helmet;

2.      Registering or owning the registration of a domain name that is confusingly similar to the Mark, including but not limited to HelicopterHelmets.com;

3.      Doing any other act or thing likely to induce the mistaken belief that the Defendants or their goods or services are in any way affiliated, connected or associated with Plaintiff Helicopter Helmet or its goods or services; and

4.      Unfairly competing with Plaintiff Helicopter Helmet in any manner whatsoever.

B.      That Defendants be ordered to forfeit or cancel the registration of HelicopterHelmets.com or transfer ownership to Plaintiff Helicopter Helmet.

C.      That Plaintiffs be awarded monetary relief in an amount in excess of Two Million Dollars ($2,000,000.00) to be fixed by the Court in its discretion as just, including:

1.      All profits received by each Defendant as a result of its unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. § 1117 and/or S.C. Code § 39-5-140;

2.      All damages sustained by Plaintiffs as a result of each of Defendants' unlawful actions, said amount to be trebled, pursuant to 15 U.S.C. § 1117 and/or S.C. Code § 39-5-140;

3.      Statutory damages as set forth in 15 U.S.C. § 1117(d);

4.      Punitive damages; and/or

5.      Prejudgment interest.

D.     That, pursuant to 15 U.S.C. § 1116(a), each Defendant be directed to file with the Court and serve upon Plaintiffs within thirty (30) days after issuance of any injunction by this Court a report in writing and under oath setting forth in detail the manner and form in which the Defendant has complied with the injunction.

E.     That, pursuant to 15 U.S.C. § 1117 and/or S.C. Code § 39-5-140, this Court award to Plaintiffs all reasonable attorneys' fees, costs and disbursements incurred by Plaintiffs as a result of this action.

## **Jury Demand**

Plaintiffs demand a trial by jury on all issues so triable.


Respectfully submitted,

FENNO LAW FIRM, LLC


By:  ___s/Edward T. Fenno_____
Edward T. Fenno (Fed. ID No. 7498)
Christina B. Humphries (Fed. ID No. 9984)
171 Church Street, Suite 160
Charleston, South Carolina 29401
Ph: (843) 720-3747
Fax: (843) 577-0460
Email: efenno@fennolaw.com
          chumphries@fennolaw.com

ATTORNEYS FOR PLAINTIFFS

February ___, 2013
Charleston, South Carolina